IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

FAITH FORESTRY SERVICES, INC.                               PLAINTIFF

V.                                         CIVIL ACTION NO. 1:17-CV-214-SA-DAS

UNITED STATES DEPARTMENT OF LABOR                      DEFENDANT

MEMORANDUM OPINION

Now before the Court is the Plaintiff, Faith Forestry Services Inc.'s, Motion for Preliminary Injunction [4]. After reviewing all of the briefs and exhibits and after a hearing where both parties presented evidence and argument, the Court finds as follows:

Faith Forestry employs forestry workers at worksites in several southeastern states. Some of Faith Forestry's work requires large numbers of workers on a seasonal basis. To meet the demand for workers, Faith Forestry regularly uses foreign workers employed through the H-2B visa program. Applying for H-2B worker visas is a multi-step process that requires some affirmative actions from Faith Forestry, i.e., advertising the open positions to domestic workers, and multiple decisions from government agencies including, Citizen and Immigration Services, the Department of Homeland Security, and the Department of Labor. As part of the visa process, the Department of Labor assembles and issues a "prevailing wage determination." Faith Forestry must use this wage determination in various ways. Perhaps most importantly, the prevailing wage determination sets the minimum wage that Faith Forestry must pay its H-2B visa workers. The prevailing wage determination is based on numerous factors with geography as an important component. Thus, the prevailing wage determination issued to Faith Forestry is different for different worksites or locations.

In April of 2017, Faith Forestry applied for approximately 700 H-2B visas for the upcoming tree-planting season, October 2017 through March 2018. Faith Forestry followed all the steps of the visa program, the Department of Labor issued prevailing wage determinations for all of Faith Forestry's worksites, the H-2B visas were issued, and Faith Forestry ultimately hired approximately 650 foreign workers.

Faith Forestry then learned that some other companies that applied for H-2B visas after Faith Forestry were receiving different prevailing wage determinations for some worksites in Alabama. At least some of these lower wage determinations were "corrected" determinations issued by the Department of Labor. Apparently, the Department used some erroneous data when calculating wage determinations in September of 2017 for certain worksites. The Department issued "corrected" wage determinations, which changed the prevailing wage. Although Faith Forestry is focused on the worksites in Alabama where the "corrected" wage was lowered, it acknowledges that wage determinations for some locations increased based on the post-July 1 data.[1]

Concerned that these lower determinations would give its competitors an unfair bidding advantage, Faith Forestry contacted the Department of Labor by email and requested that the Department lower Faith Forestry's wage determination for these worksites to match. The Department of Labor refused, stating that the wage determination was set based on the relevant data available at the time. Specifically, the Department stated that because Faith Forestry's application was determined before July 1, 2017, it used the labor data from the previous years that did not contain erroneous data.

---

[1] In the exhibits to its initial motion, Faith Forestry redacted the portions of the employer certification report for the areas where wages increased. Whether intentional or not, this concealment raises concerns about Faith Forestry's candor to the Court. At the hearing on this matter, Faith Forestry acknowledged the wage increases.

The end result here is that Faith Forestry is stuck with a different prevailing wage determination than some companies that applied later. Faith Forestry requests a preliminary injunction from this Court allowing it to pay its H-2B visa workers at particular worksites the "corrected" wage of $15.00 per hour. The wage determination issued to Faith Forestry for the worksites in question ranges from $19.71 to $26.08 per hour. Faith Forestry also requests that the Court enjoin the Department of Labor from pursuing an enforcement action against it until this case is ultimately resolved.

At the hearing in this matter, Faith Forestry acknowledged it was not paying its H-2B visa workers, at the Alabama worksites in question, the prevailing wage issued by the Department and is instead paying them the $15.00 per hour wage that Faith Forestry argues is correct.

*Question Presented*

Faith Forestry is not challenging the validity of the initial wage determination. In other words, Faith Forestry does not argue that its original wage determination, based on the older data, was erroneous when issued. The Department asserts that it based Faith Forestry's wage determination on the data available at the time, that it has to update and implement new wage data on a regular basis to effectively administer the H-2B program, and it does so on July 1. Faith Forestry applied for the wage determination prior to July 1, so the Department used the wage data available at that time. Faith Forestry does not refute this assertion.

Aggrieved that the new post-July 1 data was more favorable to employers at certain worksites, Faith Forestry is asking that it be permitted to use the newer wage determinations issued to other companies so that it can benefit from a lower determination. Although it asserts otherwise in its complaint, Faith Forestry now acknowledges that the wage determinations based on the new

3

data actually increased wages at some worksites. Faith Forestry now concedes that, if granted relief, it will abide by all of the newer wage determinations, higher and lower.

It is important to note that in its correspondence with the Department Faith Forestry only requested a "correction" of the wage determinations that were lower for certain worksites in Alabama. The Department merely responded that Faith Forestry's wage determination was based on the pre July 1 data. Faith Forestry did not request a review of its wage determination in its entirety. It is also important to note that when Faith Forestry made its email request to the Department to lower its wage determination, at least some of Faith Forestry's H-2B visa workers were already working.[2]

The real question presented in this case is not whether the Department's initial wage determination is valid or whether the email response was arbitrary. The real question is whether the Department has the authority to update its wage data even if it could lead to similarly situated workers in the same market in the same season bringing home disparate paychecks, and if so, whether the Department exceeds its statutory authority by refusing to retroactively modify active wage determinations to reflect updates to its labor data set.[3]

*Preliminary Issues*

With these issues in mind, there are several preliminary issues that Faith Forestry has not fully addressed. First, Faith Forestry admittedly did not exhaust its administrative remedies. Under 20 C.F.R. § 655.13, Faith Forestry had seven days to appeal its preliminary wage determination. Faith Forestry never filed any written request for a review of its wage determination. Faith Forestry

---

[2] The parties acknowledge that there is no mechanism for reviewing and amending wage determinations after visas are issued and foreign workers are hired and working.
[3] Although Faith Forestry attempts to characterize the issues in this case as discrete and applicable only to its particular situation, the arguments and evidence presented indicate otherwise. A decision favorable to Faith Forestry here could indicate both that the Department's method for updating its wage data annually is improper, and that any H-2B employer would be entitled to a retroactive review of its wage determination whenever new data is implemented.

argues that the time for an administrative appeal of its wage determination was long expired when the new lower wage determinations were issued to other companies. Faith Forestry argues further that any appeal would have been instantly rejected because it was so far out of time, but fails to present any evidence to support its argument. "Ordinarily, an administrative performance must be complete before an intelligent, appropriate review may be written by a federal court." *Sweet Life v. Dole*, 876 F.2d 402, 407 (5th Cir. 1989) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S. Ct. 459, 82 L. Ed. 638 (1938); *Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir. 1974); *accord Baldwin Metals Co., Inc. v. Donovan*, 642 F.2d 768, 771 (5th Cir.), *cert. denied*, 454 U.S. 893, 102 S. Ct. 389, 70 L. Ed. 2d 207 (1981)). It is well established in this Circuit that a plaintiff bears the burden of demonstrating the futility or inadequacy of administrative review. *Id.*; *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). At this time, the Plaintiff has not met this burden.

The Court also has concerns about reviewability. Although the parties raised this issue nominally, it too is not fully briefed. Title 5 Section 701(a)(2) "preclude[s] judicial review of certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Texas v. United States*, 809 F.3d 134, 165 (5th Cir. 2015), *as revised* (Nov. 25, 2015) (citing *Lincoln v. Vigil*, 508 U.S. 182, 191, 113 S. Ct. 2024, 124 L. Ed. 2d 101 (1993) (citation omitted)). For example, "an agency's decision not to institute enforcement proceedings [is] presumptively unreviewable under § 701(a)(2)." *Id.* (citation omitted). Likewise, "[t]here is no judicial review of agency action 'where statutes [granting agency discretion] are drawn in such broad terms that in a given case there is no law to apply.'" *Id.* (citing *Vigil*, 508 U.S. at 192, 113 S. Ct. 2024). Reviewability is especially important here because Faith Forestry is asking this Court to permanently enjoin the Department from pursuing an enforcement action.[4] There is a question

---

[4] The Court also notes that *equitable estoppel* may be an issue in this case. The Department argues that Faith Forestry entered into a contract with its H-2B visa workers to pay the initial prevailing wage determination and that this

in this case as to whether the decision to update the wage data each July is "committed to agency discretion." *See id*.

*Preliminary Injunction Standard*

A preliminary injunction should issue only if the movants establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Texas*, 809 F.3d at 150 (citing *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013)). As the movant, Faith Forestry has the burden of persuasion on all four prerequisites. *Id.*; *see also Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009).

At the outset, the Court notes that Faith Forestry is not seeking injunctive relief to maintain the status quo. Instead, Faith Forestry is asking this Court to impose a new prevailing wage and to prohibit the Department from pursuing an enforcement action. Given that Faith Forestry is seeking a mandatory injunction, and is seeking relief under the Administrative Procedures Act, the grounds for granting injunctive relief in this case are at least somewhat narrower. *See Roark v. Individuals of Fed. Bureau of Prisons, Former & Current*, 558 F. App'x 471, 472 (5th Cir. 2014) (stating "a request for mandatory relief, [. . .] 'is particularly disfavored, and should not be issued unless the

---

agreement prevents them from paying the workers a lower wage now. The Department also presented, albeit quite late, some evidence that the comparator companies cited by Faith Forestry as having an advantageously lower wage determination are also estopped from paying that lower wage. Because this evidence was presented for the first time in a sur-reply, the Court will not consider it here. However, because the preliminary injunction is denied on other grounds, the Court does acknowledge generally that this argument needs to be fully briefed as the issue of mootness has now been raised. Faith Forestry's Motion to Strike [24] is granted in part and denied in part. To the extent that the Department presented new evidence in its sur-reply that Faith Forestry has not had the opportunity to address, the Court will disregard it. To the extent that the Department presented rebuttal argument, at the Court's request, after the hearing the Court will consider those arguments here.

facts and law clearly favor the moving party.'" (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)); *see also Texas*, 809 F.3d at 165.

*Discussion and Analysis*

Under the Administrative Procedure Act, an agency determination shall be set aside if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Jupiter Energy Corp. v. F.E.R.C.*, 407 F.3d 346, 349 (5th Cir. 2005) (additional citations omitted). "The fundamental precept that permits this deferential standard of review is that 'an agency must cogently explain why it has exercised its discretion in a given manner' and 'must supply a reasoned analysis' for any departure from other agency decisions." *Id.* (citing *Sea Robin Pipeline Co.*, 127 F.3d at 369 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 48, 57, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)). However, "a court is not to substitute its judgment for that of the agency" or "supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (citing *State Farm*, 463 U.S. at 43, 103 S. Ct. 2856 (internal quotation marks and citations omitted)); *see Sea Robin Pipeline Co.*, 127 F.3d at 369.

The Department argues that it has to update and implement new wage data on a regular basis to effectively administer the H-2B program. This update takes place on July 1 of each year. Because Faith Forestry applied for H-2B visas before July 1, the data available at that time was used to make the prevailing wage determination.

The bulk of Faith Forestry's argument is built around the premise that it is unfair for the Department to require it to pay its H-2B visa workers a higher wage for the same worksites at the same time simply because it applied earlier. The equity and practicality of this argument is not lost on the Court. The Court also understands that wages fluctuate and that in order to maintain the

mandates of the H-2B program, it is inevitable, and desirable, for the Department to update its wage data.

Faith Forestry argues that the Department's stance on this issue runs contrary to its own policy. Specifically, Faith Forestry argues that paragraph five of the Employer Certification states: "The offered wage equals or exceeds the highest of the most recent prevailing wage for the occupation that is or will be issued by the Department to the employer for the time period the work is performed . . . ." Faith Forestry argues that the wording of this paragraph means that it is only required to pay the most recent wage determination made by the Department and not the wage determination issued to it during the visa application process. Faith Forestry argues that its interpretation is consistent with the overarching policy goals of the H-2B program, to "neutralize any 'adverse effect' resultant from the influx of temporary foreign workers." *Williams v. Usery*, 531 F.2d 305, 306 (5th Cir.), *cert. denied*, 429 U.S. 1000 (1976); 20 C.F.R. § 655.0(a)(3).

Faith Forestry's interpretation of paragraph five would essentially create a rolling prevailing wage with employers required to update their wages based on the most recent wage determination even if their H-2B visa workers were already in place and working at a different wage. The Department argues that this interpretation has no basis in law and that the employer must pay the wage advertised to workers during the application process.

Faith Forestry's interpretation of paragraph five is a novel one. Adopting this interpretation would result in a substantial and sweeping change in the way the H-2B visa program is administered. There are numerous implications presented by this issue that reach far beyond this one employer. These issues have not been fully presented. In addition, Faith Forestry's arguments sound generally in policy and equity and it has not presented any binding precedent directly on point.

Because of the significant underlying issues in this case, and the lack of binding precedent on the material issues, the Court finds that Faith Forestry failed to demonstrate a substantial likelihood of success on the merits, and a preliminary injunction is not warranted.

The Court also notes that Faith Forestry failed to carry its burden on the second prerequisite, substantial threat of irreparable injury. Faith Forestry is not paying its workers the prevailing wage determined by the Department, and is instead only paying the $15.00 per hour it believes is the correct wage. Thus, Faith Forestry has avoided any potential injury that could result from paying too high a wage. Although Faith Forestry argues that it will have to start paying the Department issued wage soon, the Court finds this argument too speculative.

Although the Court finds that a preliminary injunction is not warranted, the Court recognizes the importance that reaching a final determination in this case before the H-2B visa workers return to their home countries has both for the parties and for the workers. The parties agreed that the merits of this case can be determined on briefs and that both sides are capable of meeting an accelerated briefing schedule. The Court finds that this is the best path for reaching a final decision in this case.

Faith Forestry's Motion for Preliminary Injunction [4] is DENIED. Faith Forestry's Motion to Strike [24] is GRANTED in part and DENIED in part.

SO ORDERED on this the 19th day of March, 2018.

    /s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE